**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) No. 01 CR 1098-1<br>v. ) Hon. Rebecca R. Pallmeyer<br>)<br>)<br>CLACY WATSON HERRERA ) | |

**DEFENDANT'S POST-MANDAMUS VOIR DIRE QUESTIONS**

Now comes the Defendant, CLACY WATSON HERRERA, by and through his attorney, GABRIEL A. FUENTES of JENNER & BLOCK LLP, and files his Post-Mandamus Voir Dire Questions as suggestions for the Court to inquire into the jury's competency and willingness to hear the evidence fairly and impartially after the multiple delays and interruptions visited upon this trial by the government's resort to mandamus to reverse an evidentiary ruling by the District Court after the Defendant was placed in jeopardy and before final verdict.

**INTRODUCTION**

As outlined in Defendant's Memorandum of Law in Support of His Motion for Mistrial, this trial has seen repeated delays including the below:

- The government kept the jury waiting for nearly the entire morning of July 12, 2010, so it could present the testimony of a DEA witness to establish "regular practice" evidence under Fed R. Evid. 406, and so it could present testimony from the late-arriving cooperator Latrece Gayden. Live testimony before the jury did not begin until 11:30 a.m., the jury having waited for about two hours in the jury room.

- The next day, July 13, 2010, the government obtained a stay of the trial after the lunch break, so that the government could file the first of its (so far) two mandamus petitions in the Seventh Circuit, which denied the first petition. Upon the jury's return from lunch on July 13, it was told to return at 9:30 a.m. on July 15.

- The jury returned on July 15 but heard no evidence and was told after a 45-minute wait in the jury room that the Court would advise jurors as to when they would return.

- Trial resumed on July 19 but was sent home after lunch when the government produced new chain-of-custody documents to the defense for the first time.

- On July 20, the jury sat in the jury room for much of the morning while the Court and the government conducted another voir dire of a new witness outside the jury's presence. After hearing evidence briefly for the remainder of the morning, the jury returned from lunch and was kept waiting in the jury room for nearly two hours, only to be told to return the following day, as the government had not produced a signed laboratory report by one of its witnesses, Stephen Koop.

- On July 21, the jury waited for about an hour an 19 minutes before it began to hear testimony, and then another half hour after the lunch break before testimony resumed. But the afternoon testimony did not last long, as the government ran out of witnesses, and jurors were sent home. July 21 was the last day the jury has heard evidence in this case.

- On July 22, the government sought and obtained the second of its two stays for purposes of filing a mandamus petition, and the jury assembled but was sent home indefinitely.

- On July 30, the Court, after a Seventh Circuit-ordered reassignment of judge, advised the parties at a status hearing that the remaining 12 jurors (one juror was dismissed on July 29) would return as ordered on August 2 for the resumption of trial.

Contrary to suggestions made by the government before the Court at its July 30 status hearing, the above delays are not ordinary and threaten to have an adverse impact on the jury's ability to deliberate. Having been summoned and sent home, summoned and confined to the jury room for huge blocks of time, and then summoned and sent home again, now to be summoned again, this jury is fed up, as evidenced by the comments on July 22 of three jurors who said their everyday lives had been put under severe stress by the process. The defense is now left to wonder whom the jurors will blame for the delays (and it is not axiomatic that they will blame the government), and whether the jury is prepared to deliberate thoroughly and carefully, as opposed to wanting to reach a quick conclusion and go home.

All of that is aside from the startling and unprecedented action of the Seventh Circuit in removing the trial judge while the jury was empaneled. The defense is left to wonder what

impact that removal will have on the jury, which saw Chief Judge Holderman disagreeing with the government, and which now sees that Chief Judge Holderman is . . . gone.

In addition, the Seventh Circuit's action led to a raft of prejudicial publicity, including:

- The Chicago Sun-Times published two stories in which it mentioned the irrelevant and prejudicial fact of the defendant's Colombian national origin, a subject of an *in limine* order barring mention of the defendant's Colombian ethnicity at trial.  (*See* Exs. A, B.)

- The Chicago Tribune has published two substantial stories about the case, one of which is attached hereto. (Ex. C.)  The attached story quoted certain of the Chief Judge's remarks from the trial transcript and conveyed the Seventh Circuit's sympathetic views toward how the prosecution was treated.  All of these comments and remarks were made outside the jury's presence and risk prejudicing the defendant, and now they have been publicly reported.

- The defense is uncertain of how far this story has spread on the so-called "blogosphere," but it found at least one item (Ex. D) in which a commenter criticized the Chief Judge, sang the praises of the U.S. Attorney's Office, and called the defendant "a despicable drug trafficker."

In the defense's view, publicity such as the foregoing items poses a high risk of unfair prejudice during jury deliberations, to the extent any jurors have been exposed to these kinds of comments.  Also, the Chief Judge on July 22 did not instruct the jurors to avoid publicity over the case or to eschew conversations with anyone about the case.

Accordingly, the defense proposes that the jurors complete a questionnaire containing voir dire questions in the form attached as Exhibit E, so that they may be examined individually upon answers to certain of the questions.  The defense respectfully submits that a written set of questions is preferable to asking jurors to single themselves out in front of their peers by raising hands.  Then, upon reviewing answers to the questionnaire, the Court could conduct an individualized one-on-one voir dire in the presence of the parties, particularly if any juror were to have discussed the case with anyone or read any public news reports of the case.

4

       The defense invites the Court to edit the proposed questionnaire as appropriate, and the questions are meant as suggestions to the Court.

Dated: August 2, 2010                    Respectfully submitted,

                                            CLACY WATSON HERRERA

                                            By:     s/ Gabriel A. Fuentes
                                                           One of His Attorneys

Gabriel A. Fuentes
Katherine Neff Welsh
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350