**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 01 CR 1098-1 |
| v. | ) Hon. Rebecca R. Pallmeyer |
| | ) |
| | ) |
| CLACY WATSON HERRERA | ) |

## DEFENDANT'S RENEWED MOTION FOR MISTRIAL

Now comes the Defendant, CLACY WATSON HERRERA, by and through his attorney, GABRIEL A. FUENTES of JENNER & BLOCK LLP, and files his Renewed Motion for Mistrial. In support of this Motion, Defendant states as follows:

1. On July 22, 2010, the Defendant orally moved for a mistrial before the then-presiding judge, Chief Judge James F. Holderman, after the government requested and was granted its second stay of the trial so that the government could obtain permission from the Solicitor General to file a mandamus petition with the Seventh Circuit, and so that the government could file the petition.

2. The oral motion was based on the delay imposed by the July 22 stay but also the previous delays, which are described in greater detail in Defendant's Memorandum of Law in Support of His Motion for Mistrial. The first significant delay came on July 13 when the government filed its first stay motion aimed at obtaining mandamus concerning the Chief Judge's then inchoate ruling on admissibility of Government Exhibit Roberson Seizure 2; despite the Chief Judge's voir dire having identified a witness who could address certain of the Court's foundational concerns with the exhibit, the government declined to call that witness and ran to the Seventh Circuit instead. On July 15, the Seventh Circuit denied the mandamus petition

without prejudice in view of the inchoate nature of the judge's ruling; *but the Seventh Circuit did so in haste, and without asking for the Defendant's input.  Had the Seventh Circuit heard from the defense, the defense would have stated unequivocally that mandamus here is improper and illegal, as 18 U.S.C. § 3731 bars interlocutory appeals of evidence rulings mid-trial, and mandamus may not be used as a end run around the statute.  See Will v. United States, 389 U.S. 90, 96-97 (1967).*  The Seventh Circuit should have denied the petition out of hand; instead, it denied the petition without prejudice and cited case law suggesting that the evidence could be admitted with the proper foundation.

3. As of July 22, the Chief Judge denied the government's motion to admit the Roberson Seizure Evidence based on the Chief Judge's determination that while some of the foundational problems had been addressed, the exhibit had inexplicably grown by 20 grams during "rebagging," and the government had not provided sufficient evidence explaining why.  (Tr. 1801-07.)

4. The government's reaction to the decision was to run back to the Seventh Circuit.  At the time of the government's July 22 stay motion, the government knew that the litigation of a second mandamus petition would take time, and would impose a burdensome delay upon the jury.  Immediately after the Court advised the jury of the indefinite delay, eight of the 13 jurors wrote notes to the Court, five of which concerned vacation and scheduling issues, and three of which conveyed that the juror's professional and/or personal lives were being disrupted by the proceedings.  In open court, one juror shed tears when she was asked about her current employment and family obligations, as she was on the brink of losing her only job prospect while caring for her young child.  Another juror said the uncertainty over his jury service was costing him business.  And another said that she has been juggling her professional obligations

with jury service to the point where on July 22 she felt physically ill. The government nonetheless pressed on with its mandamus petition, but it did not file that petition until July 26.

5. On July 27, the Seventh Circuit granted the petition, again without hearing from the defense. On July 30, the Seventh Circuit issued an opinion denying rehearing and claiming that it had to rule immediately because the defense had moved for a mistrial (as it happens, defense counsel commonly file mistrial motions when they conclude that the proceedings have been so poisoned that the defense will not receive a fair trial), and articulating a rationale for the mandamus writ including: (1) that the trial judge's comments at various points in the trial represented an unreasonable "fury" against the prosecution; and (2) that the growth of the exhibit somehow was explained, though the Seventh Circuit did not clearly articulate how it was explained. *In re United States*, No. 10-2766, slip op. at 7-8 (7th Cir. July 30, 2010).

6. Respectfully, the record does not support the Seventh Circuit's grant of mandamus of an evidence ruling during trial. The Chief Judge's comments toward the prosecution, however unpleasant they were, or however inappropriate they may have been, are an issue separate from the exercise of his discretion to exclude evidence.

7. The Chief Judge did exclude the evidence, and the government did claim that his ruling was an abuse of discretion. But even if it was an abuse of discretion, the law of mandamus does not permit mandamus to be used simply to address abuses of discretion by district judges, and the law of mandamus, coupled with Section 3731, recognizes that some categories of rulings will not be reviewable, even if they harm the government's chances of obtaining a conviction. *Will,* 389 U.S. 97 n. 5. Yet this the Seventh Circuit did not seem to understand. *Herrera*, slip op. at 5. The Seventh Circuit noted that "the normal procedures for error correction would [not] suffice," *id.*, but that is the natural consequence of the government's

limited right of appeal in criminal cases. Failing to address the critical point that the government does not always get what it wants, particularly where the Congress has specifically barred it from a particular avenue of relief, the Seventh Circuit erred in granting mandamus.

8. Therefore, the trial as currently constituted represents a creature of the Seventh Circuit's and the government's reversible error. It cannot go forward.

9. In addition, to the extent the Court's current post-mandamus voir dire of the jury demonstrates that the jurors are not prepared to hear the evidence fairly and impartially, this presents another ground for mistrial. Most notably, the Seventh Circuit removed the trial judge from presiding in the middle of the trial, sending a message (intended or not) that when one disagrees with the government, there are negative consequences. This effect coupled with the plain irregularity of removing the district judge -- an act for which there is no precedent anywhere -- provides further ground for mistrial.

10. Finally, the mistrial if declared is caused by the government's second stay of this trial on July 22 knowing that the time needed to litigate the second mandamus petition would be more than the jury could bear. Aside from the illegality of the mandamus, which is significant, the reason why the government sought mandamus was that it was in danger of not being able to deliver on its opening statement, and with the trial not going its way, the government sought to abort the trial. The government's stay and mandamus actions on July 22 had the natural consequence of causing the mistrial, so even if reviewing courts ultimately uphold the basis for mandamus, that would not change the simple fact that the mandamus proceedings themselves occasioned the mistrial, and that would not change the simple fact that the government made a move that could bring about one of two outcomes: (1) a grant of mandamus and a resumption of trial with the government's evidence admitted; or (2) a mistrial which would offer the

4

5

government a chance at seeking retrial and admission of its evidence during what in effect would be a "do-over."

11. The reasons for the mistrial may be litigated at a later time, but for all of the foregoing reasons and for the reasons stated in the supporting Memorandum of Law filed on July 26, 2010, defendant moves for a mistrial.

Dated: August 2, 2010

Respectfully submitted,

CLACY WATSON HERRERA

By:    s/ Gabriel A. Fuentes
       One of His Attorneys

Gabriel A. Fuentes
Katherine Neff Welsh
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350