UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  01 CR 01098-1 |
| | ) | |
| CLACY WATSON HERRERA | ) | Judge Rebecca R. Pallmeyer |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Clancy Watson Herrera ("Herrera") was convicted of multiple drug-related offenses and is serving a sentence of 258 months imprisonment. Citing his history of prostate cancer and increased risk of contracting COVID-19, Herrera now seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). As explained here, the motion is denied without prejudice to renewal should Herrera's medical condition worsen markedly.

## BACKGROUND

Most of the facts material to this case are laid out in the court's February 2016 opinion on Herrera's motion under 28 U.S.C. § 2255. *Herrera v. United States*, No. 14 C 1933, 2016 WL 561904 (N.D. Ill. Feb. 12, 2016). As explained there, Herrera was involved in a conspiracy to smuggle drugs into the United States. Specifically, at Herrera's direction, young women— mothers, or posing as mothers—brought liquified cocaine, concealed in baby formula cans, into the United States from Panama. The couriers, who were compensated with drugs and money, brought with them babies, their own or children who had been "rented" from parents in Chicago. Herrera was convicted on eight counts for his role in the conspiracy in 2010.

On July 22, 2011, this court imposed a 340-month sentence. (Sent'g Order [887] at 3.) To calculate Herrera's sentencing range under the Federal Sentencing Guidelines, the court first attributed to Herrera 4,445 kilograms in marijuana equivalency, which corresponded with a based offense level of 34. (Sent'g Tr. [911] at 43.) The court concluded that U.S.S.G. § 3B1.4's two-point enhancement for using a minor to commit a crime was insufficient in this case and added

three points for Herrera's use of infants in the conspiracy. (*Id.* at 53, 55.) With the adjusted offense level of 40 and criminal history category of I, Herrera's guideline range was 292 to 365 months. (*Id.* at 55-56); U.S.S.G. Ch. 5, Pt. A. The court determined that a high-end guideline sentence of 360 months was appropriate. To account for the fact that Herrera had served 20 months in custody in Panama prior to extradition, however, the court imposed a sentence of 340 months. (Sent'g Tr. At 72-73.)

In 2014, the Sentencing Commission adopted Amendment 782. *United States v. Guerrero*, 846 F.3d 983, 985 (7th Cir. 2020). This Amendment lowered the base offense for most drug-trafficking crimes (including Herrera's) by two levels and is retroactive. *Id*. Accordingly, in January 2022, this court granted Herrera's request to reduce his sentence to 235 months under § 3582(c)(2). Herrera now seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). That statute requires Herrera to exhaust his administrative remedies before the court may rule on his motion. The parties agree that Herrera has done so here.[1] Herrera claims that his medical conditions and increased risk of severe illness from COVID-19 present an imminent threat of death or serious bodily injury and are "extraordinary and compelling" reasons for his compassionate release. (*See* Clacy Watson Herrera's Emergency Motion for Compassionate Release ("Motion") [996].)

## DISCUSSION

As a general matter, a federal court "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c), but the law gives the court power to order a prisoner's early release if "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Either a prisoner himself or the Director of Bureau of Prisons may file a compassionate release motion. *Id.* When, as here, a prisoner files the motion, the court's review

---

[1] On May 26, 2021, Herrera submitted a request for compassionate release to the warden of correctional institution Big Spring on the same grounds in his motion to this court. (Gov't Resp. [1005].) His request was denied on June 10, 2021. .

"involves a two-step inquiry: one, did the prisoner present an extraordinary and compelling reason for release, and two, is release appropriate under § 3553(a)." *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021). Determining what constitutes "extraordinary and compelling" circumstances is a matter left to the discretion of the district court "subject to deferential appellate review," and guided by the Sentencing Commission's non-binding policy statement. As for the Sentencing Commission's policy statements, courts primarily look to U.S.S.G. § 1B1.13.[2] The application notes list several circumstances that may constitute "extraordinary and compelling" reasons for release, including a defendant's "terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or some other "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 application note (1)(a). The kind of "extraordinary and compelling" circumstances contemplated by § 3582(c)(1) would include "some new fact about an inmate's health or family status, or an equivalent post-conviction development, [but] not a purely legal contention for which statutes specify other avenues of relief." *United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023).

Section 3553(a) factors include "the nature and circumstances of the offense"; the "history and characteristics of the defendant"; and the need for the sentence to "reflect the seriousness of the offense," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2). If the motion does not present an extraordinary and compelling reason to justify release, the

---

[2] The Sentencing Commission has not updated its policy statements since the First Step Act amended § 3582(c)(1)(A) in 2018. See *United States v. Black*, 999 F.3d 1071, 1074 (7th Cir. 2021). The Seventh Circuit has thus held that U.S.S.G. § 1B1.13, in its current iteration, does not constrain a district court's discretion or limit the availability of compassionate relief. See id. But the court has nevertheless recognized that U.S.S.G. § 1B1.13, and particularly its application notes, provides a helpful "working definition of 'extraordinary and compelling reasons'" under § 3582(c)(1)(A). See *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

court need not address the § 3553(a) factors. *See United States v. Newton*, 37 F.4th 1207, 1210 (7th Cir. 2022).

In his motion, Herrera argued that he suffers from prostate cancer and that cancer, together with a greater risk for complications should he contract COVID-19, are extraordinary and compelling reasons for his immediate release. (Motion at 4.) The government responds that Herrera has not established "extraordinary and compelling reasons" that warrant consideration of a sentence reduction, and, even if he had met that threshold requirement, the seriousness of Herrera's crimes, along with other § 3553(a) factors, weigh heavily against Herrera's release. (*See* Gov't Resp. [1005].)

**I.     Herrera's Vulnerability to COVID-19**

Less than three weeks after Herrera filed his compassionate release motion, the Seventh Circuit held that the risk of contracting COVID-19 is not an extraordinary and compelling reason for a defendant's passionate release in light of the availability of effective vaccines. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[t]he availability of a [COVID-19] vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Herrera received the single-dose Johnson & Johnson Janssen vaccine on May 12, 2021. (*See* Ex. C of Gov't Resp. [1008].) Accordingly, the risk of Herrera contracting COVID-19 is not by itself an "extraordinary and compelling" reason.

**II.    Prostate Cancer**

Herrera, who is now 61 years old, asks the court for compassionate release based on his the fact that he suffers from prostate cancer. (Motion [996] at 4.) He was diagnosed with hypertension in December 2018 and prostate cancer in October 2019. (*See* Ex. B of Gov't Resp. [1007] at 185.) The government acknowledges that Herrera's medical condition is "very concerning", but nonetheless believes the condition does not constitute an "extraordinary and compelling reason" for release and notes that medical records suggest Herrera declined treatment

4

for the condition in May 2021.[3]  *Cf. Broadfield*, 5 F.4th at 803 (holding that the "self-incurred" risk of a prisoner who declines the COVID-19 vaccine "cannot plausibly [be] characterized as an "extraordinary and compelling" justification for release").

Herrera has referred to his condition as "Stage IV" prostate cancer, but the court sees no reference to "Stage IV" in his medical records, obtained by the government at the court's request. Those records show that Herrera has received regular treatment for prostate cancer (including radiation and chemotherapy) as well as for such conditions as hypertension, GERD (gastro-esophageal reflux disease), and knee and back pain.  (Medical Records [1034, 1042, 1043, 1057]. As of March 2023, notes show that Herrera was finishing a round of chemotherapy, that a bone scan the previous year was negative for metastatic disease, and that his PSA (prostate-specific antigen) levels had declined over the previous six months from 25 to 22.  (Medical Records [1057], Page ID # 10668.)  The notes show Herrera will continue to have PSA tests every three to six months.  (*Id*.)  Herrera's PSA score, and his Gleason score[4] of 8 are concerning, but not so grave as to suggest he is near the end of life.  Indeed, Herrera himself does not appear to believe his condition is incapacitating: when asked in a May 31, 2023 telephone hearing where he would be living, if this motion is granted, Herrera stated that he intends to return to his native Columbia and seek employment.

## III.     18 U.S.C. § 3553(a) Factors

The court recognizes that even if it is not immediately life-threatening, a cancer diagnosis may be extraordinary and compelling.  The government argues, however, that even if Herrera's

---

[3]     Herrera denies this; he asserts that he was brought to see a doctor in May 2021 and was instructed to return later.  (Def.'s Reply Brief [1019].)  The court notes a November 2021 medical treatment note that refers to Herrera's cancer condition as "asymptomatic" at that time and states that Herrera "[w]anted to wait for treatment until redesignated."  (Medical Treatment Note [1042], PageID #:10389.)

[4]     The Gleason grading system is used to examine cells after biopsy to determine "how abnormal your prostate cancer cells look and how likely the cancer is to advance and spread."  A score of 8 reflects a "high grade" cancer.  See https://medlineplus.gov/ency/patientinstructions/000920.htm

medical condition is deemed extraordinary and compelling, the court should deny his request as release would be inconsistent with the other relevant sentencing factors set forth in § 3553(a). The court agrees that, as the government argues, Herrera's history and characteristics, risk of recidivism, time remaining to be served on his sentence, quality of his release plan, and the impact of the BOP's efforts to maintain his safety all weigh against a sentence reduction. (Gov't's Resp. [1005] at 18.) Herrera's crimes are indeed very troubling. The scheme reflected a high level of sophistication: it required opening cans of formula, emptying and re-filling them, and then soldering them closed, carefully enough to avoid detection by border patrol agents. The conduct involved a large number of participants. Further, Herrera and his co-conspirators recruited young women to pose as mothers in return for money or drugs. This practice, and the practice of "renting" babies who served as cover for the smuggling process, is conduct that genuinely shocks the conscience.

       The court is aware that during some 14 years in federal custody, Herrera has earned his GED and has also completed a number of classes, including courses on parenting, on career preparation, goal setting, and daily living skills. (Progress Report [951-1] at 2-3.) To his credit, as well, he has maintained employment while incarcerated and has accrued no disciplinary history. (*Id.* at 3.) Herrera's son has written to the court, voicing his family's intention to provide for Herrera's medical care in Columbia, should be released. (*See* Letter from Clacy Watson Gutierrez [1050].) The court is nevertheless unwilling to release Mr. Herrera at this time. Should his medical condition materially worsen, Mr. Herrera is welcome to file a new motion for compassionate release, after again exhausting his administrative remedies by filing a request with the warden.

**CONCLUSION**

Herrera's emergency motion for compassionate release [996, 1012] is denied.

ENTER:

Dated: June 12, 2023

_____
REBECCA R. PALLMEYER
United States District Judge